**The STATE of Ohio, Appellee,**

v.

**McCOY, Appellant.**

[Cite as *State v. McCoy* (1993), 89 Ohio App.3d 479.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–456.

Decided Aug. 31, 1993.

*Michael Miller*, Franklin County Prosecuting Attorney, and *Joyce S. Anderson*, Assistant Prosecuting Attorney, for appellee.

*Judith M. Stevenson*, Franklin County Public Defender, and *John W. Keeling*, Assistant Public Defender, for appellant.

Bowman, Judge.

On December 27, 1992, Officer David Thivener was on plainclothes duty in an unmarked vehicle when he saw a red pickup truck parked in an alley in German Village. Thivener then observed a person coming from the rear of a house carrying a very large object, which was placed in the bed of the truck. The person then entered the truck and drove away.

Thivener called for backup and followed the truck for a distance until it parked at the rear of another residence. The backup officer stopped the truck and saw a large fireplace mantel with an attached mirror and a large screwdriver in the bed of the truck. Appellant, Antoinellio E. McCoy, was the driver of the truck and he was placed in the rear of the police cruiser. Although Thivener could not see the suspect well enough at the rear of the German Village house to identify him, he did identify appellant as the driver of the truck that was stopped.

Thivener then returned to the German Village house where he found pry marks on the back door and noticed that the front door had been forced open. He also found two similar mantels lying on the ground between the house and the garage. Once inside the vacant house, Thivener determined that a mantel was, in fact, missing.

The property in question was managed for the owners by Turner Management Company. Two weeks before the alleged incident, Mark Carter, a Turner employee, had been in the house and the mantel had been intact and the doors were undamaged. Carter testified at trial that appellant had never been given permission to go into the vacant house. The day after this incident, the mantel, which was valued at $1,200, was returned to Turner Management.

Appellant was indicted on three separate counts: breaking and entering; theft, with the additional allegations that the property was valued at $300 or more and that appellant had two prior theft offense convictions; and possessing criminal tools. A jury found the defendant not guilty of breaking and entering, and possessing criminal tools, but guilty of the theft offense. The jury also made additional findings that the value of the property exceeded $300 and that appellant had two previous theft offense convictions. Appellant received the maximum sentence allowed for a conviction of a third-degree felony, a two-year determinate sentence of imprisonment. Appellant now brings this appeal and asserts the following assignment of error:

"The trial court erred when it entered a judgment of conviction against the defendant for grand theft, based upon the allegation of two prior convictions of theft offenses, when the state failed to present sufficient evidence to identify the defendant as the offender in the previous case."

In his assignment of error, appellant asserts that the trial court erred in entering judgment against him on a third-degree felony, as opposed to a fourth-degree felony, because the state failed to present sufficient evidence to identify the defendant as the offender in two previous cases in which he allegedly had a prior conviction.

At the close of the state's case, the state offered into evidence, and the court accepted, an entry of guilty conviction dated December 22, 1988, where appellant was allegedly found guilty of receiving stolen property; a certified copy of an entry of conviction for breaking and entering, and theft, allegedly against appellant, dated September 20, 1983; a certified copy of a continuance entry for appellant in the present case; an entry of a plea of not guilty signed by appellant in the present case; a certified copy of the entry of a guilty plea allegedly signed by appellant for theft; and an entry of a guilty plea allegedly signed by appellant for receiving stolen property. The state entered these exhibits in an attempt to prove identification for purposes of enhancing the felony from a fourth degree to a third degree, as a result of two previous convictions. The state wanted the jurors to compare the signatures on the various documents and determine whether appellant had two previous convictions. The state asserted that the uniqueness of appellant's name and the comparison of the signatures from the present case to those in 1983 and 1988 would prove identification.

Appellant's counsel objected to this type of proof on the issue because it asked the jury to participate in a comparison of handwriting samples. Appellant's counsel did not believe the jury was qualified, or should be asked, to make such a comparison.

The court suggested the case be continued so fingerprints from two previous cases could be submitted; however, the state was willing to leave it in the jury's hands to determine, from the signatures on the various documents, whether those signatures from 1983 and 1988 were the same as the ones on documents in the present case.

In his closing argument, with regard to the signatures, the state commented:

"One final thing. You will be given the instruction by the judge on the elements of the offense. He is also going to indicate to you that there are certain documents submitted by the state to help prove what is called an enhancement to the charge of theft.

" * * *

"You will have to take these documents, and you will have to decide on whether the documents given to you prove beyond a reasonable doubt that this gentleman, Mr. McCoy, has been convicted of a prior offense."

The court then charged the jury:

"A second matter to consider in the theft offense area as well is one of the last matters that counsel just commented on, and that is the matter dealing with state's Exhibits 5, 6, 7, 8, 9, and 10. There are certain documents—certified copies of two documents that are being submitted for your consideration and other documents for you to look at as well, as only as it deals with Count No. 2 of the indictment, the theft offense.

" * * *

"It is for you to consider whether or not the state has proven to you beyond a reasonable doubt that by reason of these documents, when you examine them, whether or not the certified copies of these two prior convictions convince you beyond a reasonable doubt that this defendant, Antionellio E. McCoy, has twice previously been convicted of felony offenses, basing that upon the documents themselves and making whatever comparisons you can make to the documents filed in this case.

" * * *

"If you make a finding of guilty of the theft, if you assess a value to the theft, then you can consider these documents and make a further determination as to whether or not you find he has previously been convicted. That is a separate matter that you must find beyond a reasonable doubt, as with everything else."

After deliberations, the jury found that appellant had twice been convicted of receiving stolen property, breaking and entering, and theft. Based on this decision, the trial court sentenced appellant on the enhancement.

R.C. 2945.75(B) provides:

"Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."

In *State v. Henderson* (1979), 58 Ohio St.2d 171, 12 O.O.3d 177, 389 N.E.2d 494, the court held that a prior conviction for purposes of R.C. 2913.02(B) is an element of the offense of grand theft and must be demonstrated beyond a reasonable doubt.

Based on *Henderson,* this court finds that additional evidence, besides a certified copy of a judgment entry, must be presented to prove a prior conviction of an accused beyond a reasonable doubt. Without such evidence, there can be no enhancement.

Evid.R. 901(B)(3) provides that an expert or a jury, as a trier of fact, may compare the handwriting in question with a specimen of handwriting which has been authenticated. Further, if a matter falls within the common knowledge

of laymen, the jury is presumed to be knowledgeable about the matter, and expert testimony is not necessary. However, many subjects which are not entirely beyond a lay juror's comprehension would be assisted by the admission of expert testimony. Handwriting comparisons are illustrative of this point since jurors can compare the handwriting to determine common authorship, but a questioned document examiner's testimony is superior and would be admissible. See, *e.g.*, *State v. Butler* (Nov. 21, 1991), Cuyahoga App. No. 59424, unreported, 1991 WL 244472. In addition, jurors are not to conduct experiments or have independent inquiry concerning the evidence, as such activity constitutes juror misconduct. *State v. King* (1983), 10 Ohio App.3d 161, 10 OBR 214, 460 N.E.2d 1383.

In this case, no foundation was laid that any of the signatures in the exhibits admitted into evidence did, in fact, contain appellant's signature. Appellant's signature was not authenticated by any witness, let alone an expert, and nothing in the evidence identified appellant as the prior offender in the other cases, other than the similarity in name. The jurors were never instructed that they were to examine the various documents and the handwriting thereon to determine whether it was that of appellant. Because the instruction that the jurors were to make whatever comparisons they could from the documents was so broad, it is mere speculation as to what the jurors did with the documents and whether they conducted any handwriting comparison.

This court finds that the state failed to prove that appellant was previously convicted of a theft offense. Considering the number of ways in which the state could have proved this, some of which were mentioned by the trial court, this court will not condone admitting into evidence documents, without authentication, with which jurors can perform an independent handwriting analysis. Accordingly, appellant's assignment of error is well taken.

This court declines appellant's invitation to reverse this matter for a new trial as there is sufficient evidence on which the trier of fact could find that appellant committed the offense of theft. However, this cause is remanded to the trial court for sentencing of appellant for a conviction of a fourth-degree felony and for sentencing consistent with this opinion.

*Cause remanded for sentencing.*

TYACK and DESHLER, JJ., concur.